HOME TITLE INS. CO. OF NEW YORK v. KEITH.

(District Court, E. D. New York. March 3, 1916.)

1. INTERNAL REVENUE ☞19(1)—STAMP TAX—STATUTORY PROVISIONS—"OR."
   Under Act Oct. 22, 1914, c. 331, § 5, 38 Stat. 753, imposing a stamp tax on deeds and other documents therein mentioned or on the paper upon which the instrument is written by any person who shall make, sign, or issue it, or for whose use or benefit it shall be made, signed, or issued, section 6, imposing a penalty for making, signing, or issuing or causing to be made, signed, or issued any such document or paper without the stamp, and section 11, providing that any person registering, issuing, or transferring any such instrument without the tax shall be guilty of a misdemeanor, the stamp need not be attached to the paper before the paper is signed or partially executed if it is subsequently affixed before the paper is issued, as the word "or" is disjunctive as to persons but conjunctive as to a complete act of making, signing, and using.

   [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 39, 40; Dec. Dig. ☞19(1).

   For other definitions, see Words and Phrases, First and Second Series, Or.]

2. INTERNAL REVENUE ☞19(1)—STAMP TAX—STATUTORY PROVISIONS—"CAUSING, AND FOR WHOSE BENEFIT DEED IS ISSUED."
   The grantee of land named in a referee's deed executed as part of an action for the foreclosure of a mortgage is a person causing the deed to be issued and for whose use and benefit it is issued within Act Oct. 22, 1914, §§ 5, 6, so as to impose on it the duty of seeing that the stamps thereby required to be affixed are affixed.

   [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 39, 40; Dec. Dig. ☞19(1).]

3. INTERNAL REVENUE ☞19(1)—STAMP TAX—STATUTORY PROVISIONS.
   Act Oct. 22, 1914, § 5, imposing a stamp tax with respect to deeds and other documents, as applied to a deed executed by a referee appointed in an action to foreclose a mortgage is not invalid as imposing a tax upon the state's exercise of its governmental functions, as the tax imposed is an excise tax on the business transaction involved in the purchase of the land and its transfer to the purchaser, and the transfer is in its nature the same as any transfer from one individual to another.

   [Ed. Note.—For other cases, see Internal Revenue, Cent. Dig. §§ 39, 40; Dec. Dig. ☞19(1).]

At Law. Action by the Home Title Insurance Company of New York against Henry P. Keith. On demurrer to the complaint. Demurrer sustained, and complaint dismissed on the merits.

Harry Percy David, of Brooklyn, for plaintiff.
Melville J. France, U. S. Atty., of Brooklyn, for defendant.

CHATFIELD, District Judge. The plaintiff brings the present action in order to raise the question so frequently presented in the course of the business conducted by the various title companies in this city, when deeds conveying the title to property bought in upon a sale in foreclosure must be executed and delivered by a referee who acts by appointment of the court and under authority of the statutes of the state, in selling the property, receiving the consideration therefor, and delivering the deed as a part of the foreclosure action through

which the mortgagor is divested of his title to the property mortgaged, and through which that title is thereupon vested in the purchaser free and clear of the lien in process of foreclosure.

The question has been presented in the case of Farmers' Loan & Trust Co. v. Council Bluffs Gas & Electric L. Co. (C. C.) 90 Fed. 806, under the Stamp Tax Law of 1898 (Act June 13, 1898, c. 448, 30 Stat. 448), and in Crawford v. New South Farm & Home Co., 231 Fed. 999 (So. Dist. of Fla., Oct. 7, 1915) under the present statute (38 Stat. at Large, p. 745). In each of these cases it was held that the property actually passed from the defendant or the mortgagor to the purchaser by means of the court procedure, and that the tax was upon the business as evidenced by the paper with which that title was transferred. It was held that the tax was not upon the court process nor upon the officer of the court, and that the duties of the officer of the court were not interfered with except as he in his ministerial capacity was required to do something in addition to the requirements of the foreclosure proceeding. In other words, in each of these cases the tax was held valid, as it was in the case of Stirneman v. Smith, 100 Fed. 600, 40 C. C. A. 581, but in which the certificate of a notary was held not to require a stamp, where he was performing the work of a referee or examiner in the taking of depositions for use in court.

The plaintiff has brought an action against the Collector of Internal Revenue in this district, to recover the amount paid for certain revenue stamps affixed by the plaintiff to a deed given to it by a referee in foreclosure, in an action in the Supreme Court of the state of New York, in the county of Kings. The plaintiff was not a party to that foreclosure action, but purchased the property on the sale. The referee did not affix the stamps required by the law (Act of Congress of October 22, 1914, § 5), nor did he deduct any amount as a part of the expenses of the sale for the purchase of these stamps, and the plaintiff under protest procured the stamps and affixed them before recording this deed. It then brought an action to recover the amount so paid, and the United States by demurrer has admitted the allegations of the complaint, and raised the question of the right in law of the plaintiff to recover if the facts be as alleged by it.

The plaintiff urges two propositions in support of its right to recover: First, that the act in question does not make any provision requiring the vendee or grantee to pay a stamp tax. Second, that the act is unconstitutional and void, if it imposes a tax of any kind upon the deed given by a referee in pursuance to the order and as a part of the procedure by the state court.

Section 5 provides that there shall be levied, collected, and paid, for and in respect of the documents mentioned and described in Schedule A, or for or in respect of the paper upon which such instrument shall be written, by any person who shall make, sign, or issue the same, or for whose use or benefit the same shall be made, signed, or issued, the several taxes, etc.

Section 6 imposes a penalty if a person makes, signs, issues, or causes to be made, signed, or issued any such document or paper without the stamp denoting the payment of the tax.

Section 11 provides that any person who shall register, issue, or transfer, or who shall cause to be issued, sold, or transferred, any instrument, document, or paper without the tax, shall be guilty of a misdemeanor, etc.

The plaintiff argues that a person buying at a judicial sale is neither the party for whose use or benefit the instrument is issued, nor the party who causes it to be issued, nor is he the party signing or issuing the same. The penalty against failure to attach the stamp is directed, first, to the person who fails to duly stamp, as required, the paper which must bear a stamp before it can be recorded.

[1, 2] Section 6 of the law imposes the penalty upon any one who makes, signs, or issues (that is, uses or delivers) the deed. But this does not mean that the stamp must be attached to the paper before the paper can be signed at all. It simply places upon each of these individuals the responsibility of being charged with a misdemeanor if the paper is not duly stamped before its actual issuance or use, and of course the lack of the stamp must be rectified before recording. The "or" is disjunctive as to persons but conjunctive as to a complete act of making, signing, and using.

Under section 8, the initials of the person using or affixing the stamp and the date must be placed upon the stamp as a cancellation. It would not be held that a signature or partial execution of the paper, followed by a subsequent affixing of the stamp, was a failure to comply with section 6, if the stamp was properly affixed and canceled before the paper was issued. But all persons sharing in the transaction, if the paper is not properly stamped in time, are liable. Hence a grantee or vendee who participates in the making or issuing of a paper without the proper stamp could be charged in the criminal sense with acts equivalent to "causing" it to be issued without a stamp, and section 6 is not governed by the meaning of the words "caused to be issued," as viewed from the steps in the foreclosure suit, in order to determine upon whose motion or by whose application the deed was issued.

The transfer of title and the paper evidencing that transfer is issued for the use and benefit of the person who gets the title. It is issued, so far as the foreclosure suit is concerned, because the statute requires it and as evidence of the performance of the necessary steps in the action. But its delivery as a deed is solely for the purpose of placing a marketable title in the vendee's name, and that title and its record are for the use of the vendee within the meaning of the tax law. If any expense is rendered necessary in the purchase or use of such stamps, that could be included by the referee in the same way that, if the referee found it necessary to use postage stamps for the conveyance of some document by mail, he could include the purchase of these stamps. His so doing would not impugn or impair the validity of the law requiring the use of postage stamps. Nor does the fact that the government requires the use of postage stamps on mail matter show that their purchase and use by a referee would be taxable as a disbursement.

[3] The first point must therefore be decided against the plaintiff, and it throws no light upon the constitutional question raised under

the second point. Under point 2, the plaintiff seeks to show that the statutes relating to foreclosure procedure in a state court in conducting a foreclosure, and the actions of the officer of the state court in carrying on the foreclosure suit, up to and including the delivery of a deed to the purchaser, with the receipt of the money from him therefor, are all operations of the state in the exercise of its legal rights as an independent sovereignty, with respect to matters which have not been delegated by the several states to the federal government, and it is contended that they are therefore not taxable by the federal government in any form or guise whatever.

This argument is presented in two forms, first, as illustrated by the inability of the federal government to impose a tax upon state salaries or the activities of the state per se. Collector v. Day, 78 U. S. (11 Wall.) 113, 20 L. Ed. 122.

It is said in the Income Tax Cases, 157 U. S. 584, 15 Sup. Ct. 690, 39 L. Ed. 759, that:

"The United States have no power under the Constitution to tax either the instrumentalities or the property of a state."

In U. S. v. Railroad Co., 84 U. S. (17 Wall.) 322, 21 L. Ed. 597, it was held that the United States could not tax a municipal corporation, which of course was created with the authority of a state.

In South Carolina v. U. S., 199 U. S. 437, 26 Sup. Ct. 110, 50 L. Ed. 261, 4 Ann. Cas. 737, it was held that the federal government could not prevent a state from discharging its legitimate functions of government, which would include the establishment of a judiciary, the employment of officers to administer and execute the laws, and similar governmental functions. Flint v. Stone Tracy Co., 220 U. S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312.

It would follow from this that the federal government could not impose a tax, either in the form of a stamp tax or the collection of money for the exercise of the state's jurisdiction to perform its governmental functions, nor by so doing limit the decision of matters between litigants, nor to provide for and carry out the sale of property in satisfaction of an obligation which is to be fulfilled, including the necessary steps taken to dispose of either surplus property or the remaining questions of the litigation in the court proceeding.

This proposition raises directly the question whether the apparent requirement that any person (i. e., the referee) must affix a stamp to the deed conveying the property to a purchaser in a foreclosure action (or otherwise the purchaser must see that it is done in order to be able to record his instrument, and to relieve the referee from the effects of having failed to comply with the law) imposes a tax upon the operations or the process of the court, and therefore upon the exercise of its sovereignty by the state; or whether it is merely an excise tax upon the business transaction involved in the purchase of the land and its transfer to the purchaser, or an excise tax upon the use of an instrument of the nature required to complete such a purchase.

It has been held in so many instances that an excise tax of this nature is valid if it does not come within the scope of the cases which

have just been cited, i. e., it is valid if the paper is only evidence of action by the state authority and not a governmental transaction in the exercise of that authority, where the business privilege is not separable from the right of the state to carry on its own functions, that it is unnecessary to consider whether a proper tax of this nature is legal.

The question which is difficult of determination is to decide when a tax is proper, and, as has been pointed out by the attorney for the plaintiff, a statement, that the tax in question is valid because a tax of some other sort is valid, begs the question at issue at the outset. If the tax is valid, it necessarily falls into the category of the other taxes which are valid. If it is not valid, it must be because of some distinguishing feature which immediately takes it out of the valid class.

The matter must be disposed of, therefore, as one of principle, and involves directly therewith the proposition next raised by the plaintiff, that the attempt to tax the functions of the state courts or the state government involves the power to prevent their action, either by destruction (that is, by exhaustion of the resources usable in the transaction) or destruction by prohibition of action unless coupled with some impossible condition.

The plaintiff cites such cases as Fifield v. Close, 15 Mich. 505, and Veazie Bank v. Fenno, 75 U. S. (8 Wall.) 533, 19 L. Ed. 482, holding that an actual tax upon state sovereignty (involving the right to make the tax equal to the amount of property involved) is unconstitutional. In the latter case, the proposition was recognized that a tax and prohibition against the issuance of currency, unless the tax be paid and compliance with the national law satisfied, was in effect a prohibition against the existence of other bank notes which might comply with a state statute and not with the federal statute. In such case, the subject-matter must be within the jurisdiction of Congress in order to render the tax constitutional, as otherwise it would be an interference with the operation of rights of state sovereignty which had not been transferred or conferred upon the federal government.

The same proposition is conversely stated and is the basis of the decisions in McCulloch v. State of Maryland, 17 U. S. (4 Wheat.) 159, 4 L. Ed. 579; Osborn v. United States Bank, 22 U. S. (9 Wheat.) 326, 6 L. Ed. 204; Weston v. City Council of Charleston, 27 U. S. (2 Pet.) 289, 7 L. Ed. 481; Dobbins v. Erie County, 41 U. S. (16 Pet.) 279, 10 L. Ed. 1022; and the Bank Tax Case, 69 U. S. (2 Wall.) 200, 17 L. Ed. 793—in each of which a state tax upon some activity authorized by federal law was held unconstitutional.

But in the present case no tax is specifically directed against the exercise of the authority of the state nor based upon the exercise of that authority by the state. The tax is estimated upon the transfer of real estate. A sale in foreclosure is the sale of property for the purpose of realizing cash with which to pay off an obligation, and in transferring that property in consideration for the cash a deed is necessary as an evidence of title. The certificate of the referee and a receipt for the property would be sufficient to meet the requirements

of the court if the provisions of the real estate law and the necessities of the purchaser did not call for what is known as a deed, as a muniment of the purchaser's title. He obtains for cash property which has previously been the property of another person, and the transfer of that property for cash is as liable to taxation as the transfer of property between two individuals for cash. In other words, it is an incident of business which is subject to an excise tax, and the paper evidence of the business may be the specific instrument which is taxable.

It cannot be said that the power to impose such a tax could in any way destroy or be made equal in amount to the value of the privilege or the value of the property as to which the privilege was exercised. The mere language of a tax law requiring the state to purchase and use stamps to a small or large amount upon the court papers constituting the record of the proceedings in the foreclosure action, would be open to the objection of unconstitutionality in both ways. It would of itself be an interference with the sovereign power of the state, and it would directly assert the right of the federal government to indirectly control, or even to prevent the exercise of the state authority. But the tax upon a referee's deed is exactly alike in amount and in nature to the tax upon the individual deed.

This is not a direct prohibition or interference with the proceedings of the state court, but only compels the purchaser to receive a deed bearing the proper tax, in exactly the same way as if he were purchasing from an individual. Further, it is not an indirect attempt to exercise authority over the state court's action, for it could not interfere with or be increased in amount, so as to equal and thus wipe out the transfer intended, unless by the same provision all transfers of real estate were affected in the same way and, even, entirely prevented.

We need not argue the question whether the federal government would have the power to prevent all transfers of real estate, by excessive taxation, for we have started with the assumption that some taxation of the transfer of real estate is within the proper exercise of federal authority. In a foreclosure sale, the price sought must be sufficient to cover the lien and the expenses. If these expenses include a stamp tax, then the purchaser must bid sufficient to cover that tax, or a deficiency will result. If deficiency results, the expenses, including the stamp, would still be paid, and the deficiency would be transferred into a loss to the party who had invoked the authority of the state court and who had not protected, by buying in the property, or by bidding up to an amount which would cover his claim and expenses, or would result in a deficiency judgment, which in the theory of the law will recompense the mortgagee for the amount which he does not realize from the sale of the property.

But in its nature the transfer of the property for the cash which it does bring is exactly the same as the transfer of property from one individual to another for the cash which the purchaser may pay. The deed which goes to make his title is exactly the same in effect in each instance, and its taxability does not depend upon the identity nor the

authority of the person making the deed, and hence the addition of a stamp is not a limitation upon the authority of that person, but is merely an excise tax upon the transfer involved in the purchase. In this light it is reconcilable with the provisions of the statute in question, and there seems to be no reason for holding that the act is unconstitutional.

The demurrer will be sustained, and judgment absolute dismissing the complaint upon the merits may be entered.